404

LARRY GRAY *v.* STATE OF ARKANSAS

5711                                      479 S.W. 2d 560

Opinion delivered May 1, 1972

*Nance, Nance, Fleming & Hatfield,* for appellant.

*Ray Thornton,* Atty. Gen., by *James A. Neal,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Larry Gray was charged with five counts of robbery, three of the charges relating to alleged robberies of the same company. On motion of appellant, the cases were consolidated, and on trial, Gray was convicted on all counts. Gray was also charged with being a habitual criminal and the jury again retired and reached a verdict setting his punishment at 28 years in the State Department of Correction. From the judgment so entered in accordance with the verdict, appellant brings this appeal. For reversal, two points are asserted, the principal one being that the evidence was insufficient to sustain the conviction.

Gerald Poll, who was employed at the Liberty Petro-

leum Station in West Memphis, testified that at about 10:30 p.m. on January 7, 1970, a black man came to the station, held a pistol on him, and directed him to give the robber "all of the money that I had on me". $190.00 was taken, and Poll was then locked in the restroom. Poll testified that on the night of March 17, 1970, between 10:30 and 11:00, the same person again robbed him of something over $80.00, and again on the night of March 27, about 11:15, the same individual again robbed him of something over $40.00. Poll said that the January robbery took place inside the office, that lights were on inside and outside the office, and he talked with the robber for two or three minutes. He reported the occurrence to the West Memphis Police Department, giving a description of the individual who had robbed him. On the occasion of the March 17 robbery, two individuals participated, but Poll said that he did not see one of them clearly. Poll initially identified Gray in early April from six or seven photographs that were shown him by the police; he also identified appellant in a police line-up involving five black males, and likewise identified Gray during the trial as the robber.

Benny Roberts testified that on March 25, 1970, an individual came to Benny's Auto Parts, a store in West Memphis, purportedly to look at some wheels; this person then left and returned about five minutes later with a small revolver and made a demand for money from Roberts and his brother, Noel Roberts, who was also present. The witness stated that $250.00 was taken from the cash register and $125.00 taken from the witness and his brother. Roberts said that misting rain was falling at the time of the robbery, which occurred about dusk but that the inside store lights were burning; that the robber was in the store about fifteen minutes, making no attempt to hide his identity. Roberts said that he stood within a few feet of the individual for something like five minutes, and subsequently gave the police a description of the robber. He identified Gray as the individual who had taken the money.

Mary L. Lewis, employed at the Bil-Roy Motel in West Memphis, testified that on the night of March 28,

she was working in the office when appellant and another man walked in to request work; Gray then held a pistol on her while the other man tood the owner's pistol, which was under the counter, and about $135.00 in cash, together with trading stamps. This robbery occurred between 7:30 and 8:00 p.m. As to the lighting of the office, Mrs. Lewis said "Well, it's lit up good; they've got them kind of lights in there, you know, and they was all on." Mrs. Lewis identified Gray as one of the participants in the police line-up and during the trial.

Appellant argues that this testimony cannot be relied upon for several reasons. It is first asserted that all had "poor vision". It is true that all wore glasses but there is no showing, that with this aid, there was anything wrong with their vision. It is mentioned that they only saw the robber for a short period of time but we must remember that Poll saw him on three occasions, and Roberts stated that the robber was present in the office for fifteen minutes. Mrs. Lewis said "I was standing looking straight at him and that pistol too" and she observed him closely enough to notice that he, in opening the cash register, "pushed the 'gas' button on the register to open it". Of course, as pointed out by appellant, all were somewhat frightened, but his certainly does not mean that no identification could be made; very likely, all persons who are victims of robberies are somewhat nervous, but this fact does not preclude their testimony as to identity. It certainly appears that the lighting was adequate to permit identification.

Appellant's strongest point is that varying descriptions were given to the police, but these variances, in the main, are of no significance. All three witnesses used the same age range, Poll stating 19 to 20, Roberts stating 20, and Mrs. Lewis stating 18 to 21. Actually, Gray was 20. In weight, Poll described the robber in the January robbery as 150 to 160 pounds and in the March 27 robbery as 140 pounds;[1] Roberts said his weight was 145

---

[1] The record does not reflect the identification given the police on the March 17 robbery.

to 150 pounds and Mrs. Lewis stated 150 to 160. Gray said that he weighed 135 at the time. On height, Poll estimated the January robber as 5'10" and the March robber 5'9"; Roberts said 5'9" to 5'11", and Mrs. Lewis said 5'6". According to Gray, his height was something over 5'11". It will be noted that only Mrs. Lewis was several inches away from the description given by the others. This witness, while being interrogated, was asked if she could "guess as to how tall he was" to which Mrs. Lewis responded "Oh that's something I'm the worst in the world at". She then stated "I guess he was about 5-feet-6. It could be more or less when it comes to my guessing". Of course, determining weight and height is difficult for many persons, even when their observations are made at normal times, and almost invariably, when several people are called upon to look at the same individual, they will, in some respect, describe him differently. The fact remains that the jury heard all of these people testify, and were well aware that they did not coincide one hundred percent in their descriptions. The matter of determining the accuracy of the identification of appellant was entirely a matter for the jury to decide. In addition, appellant wrote out a statement in long hand admitting the perpetration of the robberies. Certainly, the evidence was sufficient to sustain the conviction.

It is also contended that the confession, just mentioned, was involuntarily made, being coerced by the officers. This same allegation, involving the same confession, was made in an earlier case against Gray, and we upheld the finding of the trial judge that the confession was voluntarily given.[2] No evidence strengthening the contention so as to invalidate the confession was given in the instant case, [3] and in fact, only one para-

---

[2]See *Gray v. State*, 250 Ark. 842, 469 S.W. 2d 123, which was reversed on other grounds.

[3]At the hearing in chambers on the question of voluntariness of the confession, the record reveals the following questions by the attorney for appellant, and the answers given by Gray, as follows:

"Q. Have you reviewed the transcript in the matter? Have you reviewed the transcript of record, the prior record, in this matter?

graph is devoted to this argument.

Affirmed.

FOGLEMAN, J., not participating.

---

A. Yes sir.
Q. Have you reviewed the testimony concerning that in the hearing outside of the jury in Chambers, concerning the voluntariness of the confession?
A. Yes, sir, I did.
Q. Do you have anything at this time that you know of that you can add to what you stated at that time, any further evidence?
A. No, I don't."